[Cite as *State v. Lewis*, 2024-Ohio-1786.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                 No. 112730

    v.                           :

DEJUAN LEWIS,                           :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 9, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-658957-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sasha R. Brooks, Assistant Prosecuting Attorney, *for appellee.*

Wegman Hessler Valore and Michael Gordillo, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant DeJuan Lewis ("Lewis") appeals his conviction and sentence for aggravated robbery and other charges. For the following reasons, we affirm.

## Factual and Procedural History

{¶ 2} On April 26, 2021, a grand jury convened and presented a true bill indictment against Lewis for aggravated robbery, a felony of the first degree (Count 1); robbery, a felony of the second degree (Count 2); robbery, a felony of the third degree (Count 3); having weapons while under disability, a felony of the third degree (Count 4); receiving stolen property, a felony of the fourth degree (Count 5); and failure to stop after accident, a misdemeanor of the first degree (Count 6). Counts 1, 2, and 3 each included one-year, three-year, and 54-month firearm specifications. Counts 1 and 2 included notice of prior conviction and repeat violent offender ("RVO") specifications. Count 4 included one-year and 18-month firearm specifications. Lewis elected to waive a jury trial on Count 4 in its entirety and the notice of prior conviction, RVO, and 54-month firearm specifications and executed a jury waiver.

{¶ 3} The events leading up to the indictment began on the morning of November 15, 2020, when a young man wearing a scarf that covered his head and his lower face entered Adam's Deli on Bridge Avenue in the city of Cleveland. The owner of the deli, Angel Torres, was behind the counter, serving a customer. Feeling uneasy, Mr. Torres waved the young man over to the counter, but he initially begged off. After the original customer stepped aside, the young man changed his mind, approached the counter, and pulled a gun out of his waistband pointing it alternately at Mr. Torres and the customer while demanding money. The young man reached into the till and grabbed money out of it and demanded the money Mr. Torres held

in his hand before abruptly leaving the store. A surveillance camera hidden behind the cash register captured the entire incident.

{¶ 4} Mr. Torres followed the young man out of the store and saw him enter a vehicle parked out front. He made eye contact with the young man but was unable to provide a description. When asked by the police, Mr. Torres was unable to describe the car or the gun. He believed the car was dark and the gun was medium-sized.

{¶ 5} While attempting to flee the area, the perpetrator ran a red light at the intersection of Bridge and Randall. Abby Ayers, who had the right of way, saw the car approaching fast as she entered the intersection and slammed on the brakes. She was unable to stop due to the weather conditions and the speed of the other vehicle. She t-boned the car, which she described as a dark grey or black SUV. Ms. Ayers pulled over to the side of the road as did several cars behind her. The driver of the SUV sped off. Ms. Ayers called 911 to report the hit-and-run accident and described the driver as male but indicated she did not get a good look at him. As she was finishing the 911 call, Mr. Torres approached her. Ms. Ayers subsequently reported to the dispatcher that a nearby store owner had just told her the driver of the SUV had just robbed his store.

{¶ 6} The police were able to locate the suspect's car parked in front of some apartments near W. 25th Street. Officers ran the plate and vehicle identification number and it came back as stolen from Enterprise Rental Car ("Enterprise"). The car was towed and swabbed for DNA. Those DNA swabs were tested against samples

of Lewis's DNA collected on his arrest. Lewis's DNA was a match for DNA found in the car.

{¶ 7} Enterprise identified the renter as Ashley Parker. Officers showed Ms. Parker a still photo from the deli's surveillance video. She identified the person as "Dog Nose" or "Juan," someone she knew from the neighborhood who she described as an "associate." Ms. Parker subsequently sent copies of text messages between herself and "Juan" to Det. Jerome Krakowski with Cleveland Police. Those messages included pictures of "Juan." Det. Krakowski was able to identify "Juan" as Lewis. He went to see Ms. Parker and showed her a picture of Lewis from the Ohio Law Enforcement Gateway. She indicated that Lewis was "Juan" and was the person depicted in the store surveillance photo. At trial, Ms. Parker acknowledged that she agreed to testify after receiving a favorable plea deal for pending felony charges. She also acknowledged that she had identified Lewis in pictures the police showed her before she reached a plea deal with the prosecutor's office.

{¶ 8} Lewis was ultimately found guilty of Counts 1, 2, 3, 4, and 6 and all associated specifications. The jury acquitted him of Count 5, the receiving stolen property charge. The trial court found that Counts 1, 2, and 3 merge for the purposes of sentencing. The state elected to proceed with Count 1. The court sentenced Lewis to four to six years on Count 1. The trial court also found that the one-year and three-year firearm specifications merged into the 54-month specification. The trial court sentenced Lewis to both 54-month firearm specifications under Counts 1 and 2 and ran them consecutively to one another and consecutive and prior to the term on the

base count in Count 1. The trial court sentenced Lewis to 18 months on the firearm specification to Count 4 and ran it prior to and consecutive to the base charge of three years. The court ran the base charge in Count 4 concurrently to the base charge in Count 1. Finally, the court sentenced Lewis to time served on Count 6 for a total aggregate sentence of 14½ to 16½ years.

{¶ 9} Lewis appeals assigning the following errors for our review:

### Assignment of Error No. 1

The trial court erred in denying appellant's Rule 29 motions where appellant's convictions were not supported by sufficient evidence.

### Assignment of Error No. 2

The trial court erred in denying appellant's Rule 29 motions where appellant's convictions were against the manifest weight of the evidence.

### Assignment of Error No. 3

The trial court erred by imposing an unlawful sentence.

### Assignment of Error No. 4

The trial court committed reversible error prejudicing appellant when it imposed an unconstitutional sentence upon appellant pursuant to the "Reagan-Tokes Law," which is unconstitutional on its face.

## Law and Analysis

{¶ 10} In the first assignment of error, Lewis argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal because the state failed to present sufficient evidence to sustain the convictions.

{¶ 11} As a preliminary matter, we note, Crim.R. 29(A) provides that a court

"'shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses. Because a Crim.R. 29 motion questions the sufficiency of the evidence, [w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'"

*State v. Scott*, 8th Dist. Cuyahoga No. 110691, 2022-Ohio-1669, ¶ 36, citing *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 12} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant question is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 13} Lewis argues that there was insufficient evidence to establish identification, i.e., that he was the person who committed these crimes. We disagree. Ms. Parker identified a picture of the perpetrator taken from the surveillance video as Lewis. Although she was not present, there were sufficient facts in evidence to establish that Ms. Parker was familiar enough with Lewis to identify him from a photo. The evidence further established that the perpetrator of the robbery, i.e., Lewis, was involved in the accident with Ms. Ayers as evidenced by

her testimony and the 911 call. Finally, the abandoned car was found shortly thereafter, processed, and found to contain Lewis's DNA. While the forensic analyst agreed that the presence of DNA did not establish when the person had the car, the surrounding evidence established that Lewis had possession of the car prior to police locating it. In addition to the facts just described, Ms. Parker testified that she had only rented the car for two days and that she had previously given Lewis rides but that she had not given Lewis permission to drive the car she had rented on this occasion. Based on the foregoing, there was sufficient evidence, if believed, to establish Lewis's identity as the perpetrator.

{¶ 14} Accordingly, the first assignment of error is overruled.

{¶ 15} In the second assignment of error, Lewis challenges whether his convictions were supported by the manifest weight of the evidence. Although Lewis points to Crim.R. 29 as a basis for his argument, as we have noted, Crim.R. 29 addresses the sufficiency of the evidence, not the weight. Accordingly, we will address whether the convictions are supported by the manifest weight of the evidence. Lewis again focuses on the testimony of Ms. Parker and argues that it was not credible and therefore failed to establish that he was the perpetrator of these crimes.

{¶ 16} Unlike sufficiency, "'weight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The weight of the evidence relates to "'the evidence's effect of inducing belief.'"

*Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. An appellate court must consider all of the evidence in the record, the reasonable inferences to make from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, N.E.2d 717 (1st Dist.1983). A decision to reverse a conviction based on the weight of the evidence stems from this court sitting as the "thirteenth juror" who "disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 17} Lewis argues that Ms. Parker's testimony was not credible because the plea agreement she received was an enormous incentive for her to lie. Further, she was shown a single photograph and "pressured" into making an identification. Finally, Lewis argues that Ms. Parker dodged questions about her relationship with Lewis and may have harbored animosity towards him that led her to lie.

{¶ 18} It is clear in the record that Ms. Parker did not want to be in court. She expressed a desire to leave and admitted that she did not want to come to court. However, the testimony from Ms. Parker established that she identified a picture of the perpetrator as Lewis prior to her plea deal. There was no evidence in the record that Ms. Parker gave a prior statement that was inconsistent with her testimony at

trial. The only evidence presented was that she always and consistently identified Lewis as the person in the pictures of the perpetrator.

{¶ 19} Additionally, there was no issue with the method with which the police showed Ms. Parker a picture. In this case, Ms. Parker had reported her rental car stolen but had not identified the perpetrator. Her story was that she had lent the car to a friend, not Lewis, and the friend told her that he had parked the car near her apartment and left the keys in it. Ms. Parker was not shown a lineup of a potential thief because Ms. Parker never claimed to have seen the thief. Officers showed her a picture of Lewis for two reasons: (1) they believed he was the driver of the car and (2) to establish whether she recognized him and could aid in his identification.

{¶ 20} Finally, with respect to Ms. Parker's relationship with Lewis, there was simply no evidence that the relationship ended on bad terms. Rather than dodging questions about the relationship, as the defense alleges, Ms. Parker referred to the relationship in slang terms. She testified that they were "talking." People often use that word to describe flirting and the process of talking before moving on to a more serious relationship. Ms. Parker was clear that they had not established something more serious. They had slept together once and remained "associates." Even if they had ended on bad terms, there was simply no evidence that Ms. Parker was behaving in a vindictive fashion when she testified or was motivated to lie.

{¶ 21} Based on the foregoing, the convictions were supported by the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.

{¶ 22} In third assignment of error, Lewis challenges the imposition of consecutive sentences on the two 54-month firearm specifications and one 18-month firearm specification when one of the 54-month firearm specifications is attached to an offense that was an allied offense of similar import. Lewis argues that the specifications attached to the merged counts should have merged as well and not resulted in an additional sentence.

{¶ 23} The Ohio Supreme Court addressed this exact scenario in *State v. Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370, 220 N.E.3d 690. The court's majority addressed a conflict in the appellate court districts to answer the question of "whether an offender must receive separate prison terms for multiple firearm specifications when the criminal offense to which those firearm specifications are attached have been merged as allied offenses." *Id.* at ¶ 1. Analyzing the language of R.C. 2941.25(A), the allied offenses statute, and R.C. 2929.14(B)(1)(a) and (g), which guide the sentencing of specifications, the court ultimately found that R.C. 2929.14(B)(1)(g)

> requires that the offender receive prison terms for each of the two most serious firearm specifications when the offender pleads guilty to multiple felony offenses (and at least one of those is a felony listed in the statute) and also pleads guilty to multiple accompanying specifications. The statute makes no exception to the application of its provisions if one of the underlying felony offenses has been merged. Instead, it simply applies whenever the offender has pleaded guilty to (or been found guilty of) multiple felony offenses and multiple specifications.

*Bollar* at ¶ 19.

{¶ 24} A trial court is required to impose these sentences

[i]f an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

R.C. 2929.14(B)(1)(g).

{¶ 25} In the instant case, Lewis was found guilty of two or more felonies, one of which was a qualifying offense, i.e., aggravated robbery. He was also found guilty of specifications under R.C. 2941.141 and 2941.145 as described in R.C. 2929.14(B)(1)(a) in connection with two or more felonies, specifically, aggravated robbery, two counts of robbery, and having weapons under disability. Accordingly, although Lewis invites this court to revisit the interpretation of R.C. 2941.25(A) and 2929.14(B)(1)(a) and (g) conducted by the *Bollar* Court, the settled law in Ohio requires the trial court to impose a sentence for each of the two most serious firearm specifications for which the offender is found guilty. Accordingly, the trial court did not err when it imposed a sentence on the 54-month firearm specification attached to Count 2 even though the underlying offense merged with Count 1.

{¶ 26} The third assignment of error is therefore overruled.

{¶ 27} Finally, in the fourth assignment of error, Lewis challenges the constitutionality of the indefinite sentence imposed under S.B. 201, the Reagan

Tokes Law. Lewis acknowledges that the Ohio Supreme Court has deemed the law constitutional under *State v. Hacker*, 173 Ohio St.3d 219, 2023-Ohio-2535, 229 N.E.3d 38, however, anticipating further litigation of this issue, seeks to preserve a challenge to his sentence. Nevertheless, pursuant to *Hacker,* the fourth assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, P.J., and
LISA B. FORBES, J., CONCUR